**HARTFORD FIRE INSURANCE COMPANY as subrogee of E.T. Trading, Ltd., Plaintiff,**

v.

**EMPRESA ECUATORIANA DE AVIACION d/b/a Ecuatoriana Airlines, and AMR Services, Inc., Defendants.**

**No. 92 Civ. 0174 (SAS).**

United States District Court, S.D. New York.

June 21, 1996.

Stephen A. Frank, Roman Badiak, Badiak Will & Maloof, New York City, for Plaintiff.

Francis A. Montbach, Bigham Englar Jones & Houston, New York City, for Defendant AMR Services, Inc.

Silvia L. Bolatti, Katten Muchin & Zavis, and Lisa M. Comeau, Dombroff & Gilmore, New York City, for Defendant Empresa Ecuatoriana de Aviacion.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff Hartford Fire Insurance Company ("Hartford"), as subrogee of E.T. Trading, Ltd. ("ETTL"), has moved for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Hartford seeks to strike the partial affirmative defense of limited liability pleaded by defendant AMR Services, Inc. ("AMR"), and also seeks judgment against AMR on the issue of liability. For the reasons set forth below, the motion is granted.

### I. Factual Background

The subject of this action is the loss of a shipment of air freight transported from Panama to the United States. On or about June 5, 1991, defendant Empresa Ecuatoriana de Aviacion ("Ecuatoriana") received cargo containing 11 packages of photographic goods, for shipment to John F. Kennedy International Airport ("JFK") in New York City. Affidavit of Stephen A. Frank, Attorney for Plaintiff ("Frank Aff."), Ex. G. The shipment was transported pursuant to the terms and conditions of Ecuatoriana's international air waybill and tariff filed with the U.S. Department of Transportation. Plaintiff's Statement of Uncontested Facts ("Pl.

Stmt.") ¶ 4. The goods were consigned to ETTL, who paid the shipper $184,814 via wire transfer. Frank Aff., Ex. F at 7–8. According to the air waybill, the shipment weighed 565 kilograms. Id., Ex. G. The shipper did not declare the value of the goods on the Ecuatoriana air waybill, and did not pay any additional fee in connection with it. Id.

The shipment arrived at JFK aboard an Ecuatoriana flight around 9 p.m. on June 6, 1991. Pl.Stmt. ¶ 10. The freight was off-loaded from the aircraft and moved on dollies by American Airlines ("American") to a location outside the ramp door of AMR's terminal building No. 78. Id. ¶ 11. Typically, the party arriving with freight would enter the warehouse and notify AMR personnel of the arrival. An AMR employee would then prepare a form, indicating the time and date of arrival, the amount of freight that had arrived, and which airline had delivered the freight. Frank Aff., Ex. E at 19–20. The cargo would be left outside the warehouse and AMR was responsible to take it inside and prepare it for eventual delivery to customers. Id. at 20–21. This procedure was AMR's standard procedure for arriving freight. Id. at 19–20.

However, on June 6, 1991, Julio Nieves, an AMR employee responsible for unloading and processing incoming freight, moved some of the cargo inside, but left the portion belonging to ETTL outside while he removed the freight from the dollies. Frank Aff., Ex. E at 16–17, 24–26. The portion of the cargo which had been left outside was stolen from its location while Nieves was inside the terminal. Pl.Stmt. ¶ 13.

Though AMR's terminal faces a road at JFK, and though freight was routinely left outside the terminal doors, AMR's security personnel worked only inside the building. Frank Aff., Ex. E at 30; Ex. D at 15. An internal AMR memorandum, prepared in conjunction with AMR's investigation of the theft, points out that Nieves admitted he failed to check the Ecuatoriana freight upon its arrival, failed to sign for the cargo, and failed to notify a member of AMR management that freight was missing. Frank Reply

Aff., Ex. J. The memo was signed by Ronald Mancuso, AMR's terminal manager at the time of the theft. *Id.*

Ultimately a small portion of the stolen shipment was recovered and delivered to ETTL. Frank Aff., Ex. F at 22. ETTL filed a claim for loss with Hartford, and was compensated for the loss of the unrecovered cargo. Pl.Stmt. ¶ 24. The invoice value of the unrecovered freight is $164,067. Frank Aff., Ex. F at 33.

Prior to the transportation of the stolen shipment, Ecuatoriana had entered into a contract with American, whereby American would act as Ecuatoriana's ground handling agent. Frank Aff., Ex. I. Among the duties American agreed to perform for Ecuatoriana were off-loading incoming cargo from aircraft, transporting it to a terminal, breaking down the freight, processing it through Customs, and delivering it to the consignee. *Id.*, Annex A. Under Article 3 of the Ground Handling Agreement ("Agreement"), American was permitted to sub-contract the performance of certain ground handling services. Frank Aff., Ex. I at 4. Under that provision of the Agreement, AMR began providing services for Ecuatoriana freight about two years prior to the date of the subject shipment, even though there was no formal agreement between AMR and American to perform those services. Frank Aff., Ex. D at 19. AMR billed Ecuatoriana for the services it rendered, based upon the rate which American had negotiated with Ecuatoriana. *Id.* at 20.

However, American did not relinquish all of its duties to AMR. American retained for itself the task of off-loading cargo from aircraft and moving the freight on dollies to the terminal. *Id.* at 18–19, 21. AMR had no formal agreement with either Ecuatoriana or American for the ground handling of Ecuatoriana freight at JFK. *Id.* at 11, 13–14.

Under the terms of the air waybill, Ecuatoriana's liability is limited to $20 per kilogram of goods lost, damaged or delayed.[1]

Frank Aff., Ex. G. The rights of the parties are governed solely by the terms of the air waybill and tariff filed by Ecuatoriana. Frank Aff. ¶ 3. *See also Tishman & Lipp v. Delta Air Lines,* 413 F.2d 1401, 1403 (2d Cir.1969).

Ecuatoriana's air waybill provides that

> Except as otherwise provided in Carrier's tariffs or conditions of carriage, in carriage to which the Warsaw Convention does not apply Carrier's liability shall not exceed US$ 20.00 or the equivalent per kilogramme of goods lost, damaged or delayed, unless a higher value is declared by the shipper and a supplementary charge paid.

Frank Aff., Ex. G ¶ 4. Further, the waybill states that

> Any exclusion or limitation of liability applicable to Carrier shall apply to and be for the benefit of Carrier's agents, servants and representatives and any person whose aircraft is used by Carrier for carriage and its agents, servants and representatives. For purposes of this provision, Carrier acts herein as agent for all such persons.

Frank Aff., Ex. G ¶ 7.

Similarly, rule 170(j) of Ecuatoriana's tariff, filed with the U.S. Department of Transportation, provides that

> Whenever the liability of Carrier is excluded or limited under these conditions, such exclusion or limitation shall apply to agents, servants or representatives of the Carrier and also any Carrier whose aircraft is used for carriage and its agents, servants or representatives.

Affidavit of Francis A. Montbach, Attorney for Defendant AMR Services ("Montbach Aff."), Ex. 1.

Because the Convention does not apply[2] and because no higher value was declared by the shipper, the parties agree that Ecuatoriana's liability is limited to $20 per kilogram of the lost goods. Accordingly, Ecuatoriana's

---

1. The liability limitations of the Warsaw Convention do not apply to this shipment of goods because Panama, the country of origin, is neither a signatory to nor an adherent of the Convention.

*See* 49 U.S.C.App. § 1502; Treaties in Force, U.S. Dept. of State, July 15, 1995, p. 202.

2. *See* note 1, *supra.*

liability will not exceed $11,300, and should be reduced proportionally by the weight of the portion of the shipment which was recovered by the police. Pl.Stmt. ¶ 9; Frank Aff. ¶ 8. The disputes are whether AMR, which is not an airline, is protected by Ecuatoriana's limitation of liability clauses, and whether AMR was negligent in its duties with regard to the shipment.

II. *Legal Standard for Summary Judgment*

Summary judgment will be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The burden of demonstrating that no factual dispute exists rests on the party seeking summary judgment. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). However, the non-moving party must present affirmative, factual evidence that if believed by the trier of fact would support a verdict in favor of the non-movant. *See Dressler v. MV Sandpiper*, 331 F.2d 130, 133 (2d Cir.1964) (discussing the intent of the 1963 amendments to the Federal Rules of Civil Procedure). Further, the opposing party may not rely upon unsupported denials or allegations. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

For purposes of summary judgment, the court's role is to determine whether issues exist to be tried, not to try issues of fact. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir.1987); *Balderman v. United States Veterans Admin.*, 870 F.2d 57, 60 (2d Cir.1989). The court must review the evidence in the light most favorable to the non-moving party, and draw all factual inferences in that party's favor. *See Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988). Summary judgment is improper if there is any evidence in the record from which a fair inference may be drawn on a material issue of fact in favor of the party opposing summary judgment. *See Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994). A factual issue is material if its resolution could affect the outcome of the dispute. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Summary judgment may be granted when no reasonable trier of fact could find in favor of the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

 Under Local Rule 3(g), the party moving for summary judgment must submit a separate, short, and concise statement of the material facts that the party believes are not in dispute. In contrast, the opposing party must submit a statement detailing the material facts in dispute. If the non-moving party fails to submit a 3(g) statement of facts it believes are in dispute, the court may deem as admitted the facts set forth in the movant's 3(g) statement. *See Dusanenko v. Maloney*, 726 F.2d 82, 84 (2d Cir.1984).

III. *Analysis*

A. *The Limitation of Liability Clauses*

 In non-Warsaw Convention cases, an air carrier's filed tariff, if valid, constitutes the exclusive contract of carriage between the airline and its customer. *See Tishman*, 413 F.2d at 1403. A carrier's agents may not protect themselves from their own negligence through the carrier's liability limitations unless the agents are express beneficiaries or parties to the agreement. *See Arkwright–Boston Mfrs. Mut. Ins. Co. v. Great Western Airlines, Inc.*, 767 F.2d 425, 428 (8th Cir.1985); *Robert C. Herd & Co. v. Krawill Mach. Corp.*, 359 U.S. 297, 303, 305, 79 S.Ct. 766, 770, 771, 3 L.Ed.2d 820 (1959). Thus, even though AMR was not a party to the shipping agreement between ETTL and Ecuatoriana, it may still be protected as an express beneficiary of Ecuatoriana's tariff and air waybill, which protect the carrier's "agents, servants and representatives."

 The Agreement between American and Ecuatoriana is fairly straightforward.

Annex B–4–2, a component of the Agreement which outlines the location, services and charges pertinent to the contract, was signed for American Airlines by Neil Albrecht, over the name of Warren E. Boin, Jr., "Vice President Marketing and Planning, AMR Services Corporation, *Authorized Agent.*" Frank Aff., Ex. D at 12; Ex. I, Annex B–4–2 at 8 (emphasis added). Because AMR signed the agreement as the agent of American Airlines, and because AMR and American are separate corporations, it is apparent that AMR was acting as the agent of American.

Moreover, under the Agreement, American remained "responsible to the Carrier [Ecuatoriana] for the proper rendering of such [ground handling] services as if they had been performed by the Handling Company [American] itself." Frank Aff., Ex. I at 4. Again, interpreting the contract literally, American was responsible to Ecuatoriana for all of the services to be performed under the Agreement, regardless of who actually performed them. American acted as Ecuatoriana's agent at JFK. AMR's relationship to Ecuatoriana was more distant. In sum, AMR cannot be Ecuatoriana's agent, because American deliberately and contractually placed itself between AMR and Ecuatoriana. American acted as Ecuatoriana's agent, and AMR acted as American's agent. There was no agency link between AMR and Ecuatoriana.

■ For many of the same reasons, AMR is not entitled to protection as a servant of Ecuatoriana. A party may be a servant of another if that party's physical conduct in the rendering of the service is subject to the actual control or right of control by the master. *See* Restatement of the Law of Agency 2d, § 2(2) (1958). AMR acted independently in performing the work delegated to it by American at JFK. Once the freight was placed outside the terminal door, AMR took no instruction from any party regarding the actual physical handling of the freight. Frank Aff., Ex. E at 40–41. Because AMR was neither employed by Ecuatoriana nor under Ecuatoriana's physical control while it performed its services, AMR was not Ecuatoriana's servant.

■ Finally, AMR was not Ecuatoriana's representative at JFK. Article Four of the Agreement between American and Ecuatoriana provided that Ecuatoriana had the right to appoint its own representative to inspect the facilities and services of the ground handling agent (American). Frank Aff., Ex. I at 4. Ecuatoriana had appointed Burt Leone as its representative at JFK. *See* Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment at 11. *See also* Frank Reply Aff., Ex. J. The appointment of Leone precludes AMR from claiming to be Ecuatoriana's representative.

■ The limitations of liability on a waybill or tariff must be clearly expressed, and will be strictly construed against the party who seeks protection under the clause. *See Herd,* 359 U.S. at 305, 79 S.Ct. at 771. Because AMR Services was not a party to the agreement between ETTL and Ecuatoriana, nor an express beneficiary as an agent, servant or representative of Ecuatoriana, AMR may not avail itself of the protection of the liability limitation clauses. Plaintiff's motion for partial summary judgment, striking AMR's partial affirmative defense of limited liability, is granted.

#### B. *AMR's Liability*

■ Because both parties cite New York law to support their arguments, that law will apply as it pertains to the questions of negligence surrounding the loss of the cargo by AMR Services. In the absence of a mutual contract of bailment, an implied bailment arises when a party comes into lawful possession of the personal property of another. *See Brown v. Stinson,* 821 F.Supp. 910, 916 (S.D.N.Y.1993), *Tremaroli v. Delta Airlines,* 117 Misc.2d 484, 458 N.Y.S.2d 159, 160 (Civ.Ct., Queens Co.1983). The possessor becomes a constructive bailee. *Id.* However, it is well-settled that a bailee is not an insurer. *See Hogan v. O'Brien,* 212 A.D. 193, 208 N.Y.S. 477, 478 (3d Dep't 1925). Nevertheless, a bailee may still be liable to the bailor for loss in an action for negligence. *Id.; see also Procter & Gamble Distrib. Co. v. Lawrence Am. Field Warehousing Corp.,* 16 N.Y.2d 344, 359, 266 N.Y.S.2d 785, 213

N.E.2d 873 (1965). When there is an admission or other proof that the property entered into the possession of the bailee and then was not returned, it is the duty of the bailee to explain the loss. *See Fidelity & Guaranty Ins. Corp. v. Ballon,* 280 A.D. 373, 113 N.Y.S.2d 546, 548 (1st Dep't 1952). Even where the bailee claims that the property was stolen, if the bailor has demonstrated that the theft was due to the bailee's negligence, the bailee has the burden of showing that the theft was not occasioned by its negligence. *See Leather's Best, Inc. v. S.S. Mormaclynx,* 451 F.2d 800, 813 (2d Cir.1971); *Hogan,* 208 N.Y.S. at 478.

 Applying the common law of bailments to the facts in this case, the subject shipment entered the possession of AMR Services after the cargo was placed outside the terminal door by American Airlines. Nieves' handling of a portion of the freight is sufficient proof that AMR had obtained possession of the cargo. AMR has not attempted to explain the loss of ETTL's property beyond its claim that the cargo was stolen. Hartford, on the other hand, has alleged that Nieves failed to check the freight upon its arrival and failed to sign for it. Hartford also alleges that AMR was negligent in not having its security personnel patrol outside of the building, especially since there is a road nearby and freight was routinely left outside the building. Hartford has alleged facts sufficient to warrant a finding that the theft of the cargo was the result of AMR's negligence.

AMR has not called into question nor disputed any of Hartford's allegations. In fact, AMR has not even filed a statement of contested facts pursuant to Local Rule 3(g). Instead, AMR simply states that "fact issues remain as to whether the theft was occasioned by AMR's negligence." Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment,

14–15. AMR makes no effort to point out what these "fact issues" might be.

In the absence of a 3(g) statement from the non-moving party, the Court may deem as admitted the facts set forth in the movant's 3(g) statement. *See Dusanenko,* 726 F.2d at 84. But even if this Court does not accept as admitted all of Hartford's factual allegations in its 3(g) statement, there is still nothing in the pleadings, depositions or affidavits which casts doubt upon Hartford's allegations of AMR's negligence. In such a situation, there are no factual issues to be tried. A reasonable jury, based on the facts in this record, could not find for defendant AMR Services.

Plaintiff's motion for partial summary judgment as to AMR's liability is granted.

### IV. Conclusion

Having decided that the limitation of liability clauses in Ecuatoriana's air waybill and tariff do not protect defendant AMR, and having decided that AMR was negligent as a matter of law, the Court finds that there are no further issues to be tried. While the pleadings contain a number of claims and cross-claims [3], there are no further disputes as to either liability or damages. Therefore, judgment is awarded to Hartford Fire against AMR Services for the sum of $164,067, which is the value of the unrecovered cargo less the value of the freight recovered by the police and delivered to ETTL.[4] AMR's cross-claims against Ecuatoriana are dismissed. Ecuatoriana's cross-claims against AMR are granted to the extent that any judgment is sought by Hartford against Ecuatoriana.

SO ORDERED.

---

3. The Complaint alleged breach of contract, violation of duties as common carriers, bailees and warehousemen, and negligence against both defendants. AMR cross-claimed against Ecuatoriana for indemnification and/or contribution. Ecuatoriana cross-claimed against AMR, alleging negligence, breach of contract, and seeking indemnification and/or contribution from AMR.

Ecuatoriana also claimed that AMR had a duty to defend Ecuatoriana against Hartford's claims.

4. The total invoice value paid by ETTL was $184,814. *See* Frank Aff., Ex. F at 7–8. The total value of the recovered goods was $20,747. *See generally id.* at 25.