**NIPPONKOA INSURANCE COMPANY, LTD, Plaintiff–Appellant,**

v.

**FEDERAL EXPRESS CORPORATION, Defendant–Appellee.**

No. 03–55402.
D.C. No. CV–02–04600–R.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 8, 2004.*

Decided May 31, 2005.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

418

Phillip S. Dalton, Daryl G. Parker, Mahoney Coppenrath & Jaffe LLP, Los Angeles, CA, David T. Maloof, Maloof Browne & Eagan LLC, Rye, NY, for Plaintiff–Appellant.

Andrew J. Harakas, Barry S. Alexander, Condon & Forsyth, LLP, New York, NY, Frank A. Silane, Condon & Forsyth, LLP, Los Angeles, CA, for Defendant–Appellee.

Before B. FLETCHER, NOONAN, and PAEZ, Circuit Judges.

## MEMORANDUM**

NipponKoa Insurance Company appeals the district court's entry of judgment in favor of Federal Express Corporation ("FedEx"), limiting FedEx's liability to NipponKoa to $14,801.18. NipponKoa insured a shipment of computer memory modules with an alleged value of $340,428.91, which a FedEx employee stole from its distribution facility in Feltham, England, before the shipment could be delivered to the consignee. NipponKoa, as assignee, asserts that FedEx should bear the loss under the terms of FedEx's contract of carriage with the insured, Toshiba America Electronic Components ("Toshiba").[1] We have jurisdiction under 28 U.S.C. § 1291. We review de novo the district court's summary judgment order, *Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1124 (9th Cir.2002), and we affirm.

A carrier such as FedEx may limit its liability, provided that it gives the shipper reasonable notice of that limitation and "a fair opportunity to purchase higher liability." *Read–Rite Corp. v. Burlington Air Express, Ltd.*, 186 F.3d 1190, 1198 (9th Cir.1999). Because Toshiba purchased separate insurance from NipponKoa to cover the shipment at issue, NipponKoa cannot dispute that these requirements were satisfied. *Id.; see also Albingia Versicherungs A.G. v. Schenker Int'l Inc.*, 344 F.3d 931, 939–40 (9th Cir.) ("Purchasing separate insurance on the cargo ... satisfies both requirements."), *amended by* 350 F.3d 916 (9th Cir.2003), *cert denied,* 541 U.S. 1041, 124 S.Ct. 2162, 158 L.Ed.2d 730 (2004). NipponKoa instead claims that under the terms of Toshiba's contract with FedEx, FedEx's liability for this particular shipment is not limited. We reject this contention.

Toshiba's contract with FedEx (the "Air Waybill") contains a paragraph entitled "Road Transport Notice," which provides:

Shipments transported partly or solely by road ... into or from a country that is a party to the Convention on the Contract for International Carriage of Goods by Road [May 19, 1956, 399 U.N.T.S. 189] (the "CMR") are subject

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Because the parties are familiar with the facts, we reference them here only as they are necessary to explain our decision.

to the terms and conditions of the CMR....

The CMR, in turn, "appl[ies] to every contract for the carriage of goods by road in vehicles for reward,"[2] Art. 1.1, including shipments "[w]here the vehicle containing the goods is carried over part of the journey by sea, rail, inland waterways or air, and ... the goods are not unloaded from the vehicle...." Art. 2.1. Since the "vehicle" containing Toshiba's computer memory modules was not transported by air, and since the modules were "unloaded from the vehicle," even NipponKoa agrees that the CMR does not apply of its own force. NipponKoa claims, however, that the Road Transport Notice serves to expand the CMR's application "even when the CMR does not apply *ex proprio vigore.*"

Nothing in the record supports that claim. First, this provision of the Air Waybill simply provides *notice* that shipments transported by road are "subject to the terms and conditions of the CMR." Such notice is required by the CMR itself; Article 6 requires that each shipping contract contain "[a] statement that the carriage is subject ... to the provisions of this Convention." CMR Art. 6.1(k). Furthermore, if the contract "does not contain the statement specified in article 6, paragraph 1(k), the carrier shall be liable for all expenses, loss and damage...." *Id.* at Art. 7.3. By including the Road Transport Notice in its Air Waybill, therefore, FedEx was simply complying with the treaty's commands.

Second, even if the Road Transport Notice incorporated the "terms and conditions of the CMR" into the private agreement between FedEx and Toshiba, nothing

indicates that incorporation should *expand* the CMR's application beyond its own terms. FedEx's inclusion of the phrase *"partly or* solely by road" does not suggest otherwise. NipponKoa argues that FedEx's reading of the Air Waybill renders meaningless the word "partly," claiming that "[t]he act of transporting cargo over a border can only be accomplished by one type of vehicle—a truck *or* a plane *or* a vessel *or* rail car." That is inaccurate; for example, a trailer driven onto a barge or placed on a rail car *would* cross the border "partly" by road, and the CMR would apply because the same "vehicle" crosses the entire journey and "the goods are not unloaded from the vehicle." CMR Art. 2.1. The CMR would then "apply to the whole of the carriage." *Id.* Thus, the term *"partly or* solely by road" retains meaning in other contexts, but does not apply to the shipment at issue here. Under the Air Waybill, Toshiba's shipment is not governed by the "terms and conditions of the CMR."

This shipment is therefore governed by the limitation on liability provided in the Air Waybill. FedEx stipulated that it is liable for the higher limit, contained in the tariff, of 17 "Special Drawing Rights" (or $21.85418) per kilogram when no international treaty applies. The district court properly awarded summary judgment limiting FedEx's liability for this 677.27–kilogram shipment to $14,801.18.

The judgment of the district court is AFFIRMED.

---

**2.** Under the CMR, "vehicle" means "any self-propelled vehicle normally used for the transport of persons or goods upon a road" or any trailer "designed to be drawn by a motor vehicle." Convention of Road Traffic, September 19, 1949, 3 U.S.T. 3008 Art. 4 (1949), *cited at* CMR Art. 1.2.