[No. B159531. Second Dist., Div. Five. Feb. 14, 2003.]

JOHANNE DICTOR, Plaintiff and Appellant, v.
DAVID & SIMON, INC., et al., Defendants and Respondents.

**COUNSEL**

Law Offices of Cary L. Dictor and Cary L. Dictor for Plaintiff and Appellant.

Allen K. Brown for Defendant and Respondent David & Simon, Inc.

Hosp, Gilbert, Bergsten & Phillips, F. Phillip Hosp and Jay D. Brown for Defendant and Respondent Julian Gonzalez.

**OPINION**

**TURNER, P. J.—**

## I.  Introduction

Plaintiff, Johanne Dictor doing business as CPCI, the assignee of Manhattan Transportation Company, Inc. (Manhattan), appeals from a summary judgment entered in favor of defendants, Julian Gonzalez doing business as

Gonzalez Trucking, and David & Simon, Inc., doing business as GTW (GTW). Plaintiff sought damages for computer equipment that was lost while being shipped in interstate commerce. Based upon a bill of lading which was prepared and signed by an employee of plaintiff's assignor, Manhattan, the trial court held the total amount plaintiff could recover was $7,106. Because the trial court correctly found this case is controlled by the Carmack Amendment to the Interstate Commerce Act and the $7,106 computation in the bill of lading must be enforced, we affirm the judgment.

## II. BACKGROUND

### A. *The Pleadings*

The first amended complaint, which is the operative pleading, alleged that Manhattan hired defendant, GTW, to transport by truck computer equipment from Carson, California to Las Vegas, Nevada. The computer equipment had a market value of no less than $267,488. Thereafter, GTW hired Mr. Gonzalez and Bolanos Trucking to deliver the computer equipment. (The first amended complaint identified Bolanos Trucking as a defendant. But Bolanos Trucking has never appeared in this lawsuit.) The complaint alleged the existence of an oral agreement between Manhattan and GTW. Under the terms of the oral agreement, GTW would reimburse Manhattan at full replacement value for damage to the computer equipment. It was further orally agreed coverage for such replacement value would be no less than $500,000 secured by a certificate of insurance naming Manhattan as an additional insured for any loss for the shipment. While the computers were in defendants' custody, the first amended complaint alleged they were lost. A claim was made by the owner of the computer equipment against Manhattan, whose insurer paid $267,488 as fair and reasonable compensation for the loss. Plaintiff alleged that $267,488 plus interest was due for the total loss sustained. Plaintiff sought to recover this amount based on causes of action for: contract breach pursuant to federal statutory law, the Carmack Amendment, title 49, United States Code section 14706 et seq. (first); negligence (second); and conversion (third).

In addition, plaintiff asserted a cause of action (fourth) to reform the contract between Manhattan and GTW. Plaintiff alleged that Manhattan had arranged the shipping of the computer equipment through a third party broker. Manhattan allegedly erred in issuing transportation documents which failed to reflect the following key terms: (1) GTW would reimburse Manhattan for any loss at full replacement value; (2) coverage assuring a replacement value of no less than $500,000 would be evidenced by a certificate of insurance from a cargo insurer naming Manhattan as an

additional insured; and (3) the shipment would be directly trucked by GTW rather than subcontracted to another trucking firm. Plaintiff sought damages in the sum of $302,589.12.

### B. *Summary Judgment Motion and the Undisputed Evidence*

Mr. Gonzalez and GTW moved for summary judgment or adjudication on the grounds that a bill of lading issued by Manhattan limited its assignee's damages and no reformation of the contract was warranted. Mr. Gonzalez and GTW argued that plaintiff was only entitled to judgment in the sum of $7,106. The separate answers filed by GTW and Mr. Gonzalez both alleged that plaintiff's damages were limited by the bill of lading issued January 25, 2000, by Manhattan.

Documents filed in support of and in to opposition the summary judgment motion established the following undisputed facts. John Healy, Manhattan's president, described his company's relationship with Compaq Computer Company as well as other trucking firms. This relationship existed prior to the loss which gave rise to the present lawsuit. Mr. Healy declared that Compaq Computer Company required its carriers to have sufficient insurance to respond to potential claims and agree to indemnify any loss at replacement value. Manhattan had such an agreement with Compaq Computer Company in 1999 and 2000. In 1999, Manhattan established a business relationship with GTW. Well prior to the loss which gave rise to the present lawsuit, Mr. Healy spoke by telephone with Lou Gomez, GTW's employee. Mr. Healy confirmed that future shipments, for which GTW would be hired, were for the benefit of Compaq Computer Company as shipper and were of high value consisting of computers and related equipment. Mr. Healy informed Mr. Gomez that any single shipment would be valued at a range of approximately $200,000 through $500,000. Mr. Healy also informed Mr. Gomez that GTW would be required to maintain financial responsibility to cover the full value of replacement cost of any loss or damage to the shipments. Mr. Gomez furnished Manhattan with certificates of insurance. Mr. Gomez assured Mr. Healy that GTW had its own employees doing its trucking and did not subcontract its jobs to other truckers.

Mr. Gonzalez, a truck owner operator, was hired to transport computer equipment for GTW. He was paid a standard rate for the trip from Carson, California to Las Vegas, Nevada. Mr. Gonzalez did not see what was being placed in his truck. Mr. Gonzalez was instructed to go to the warehouse office where he was presented with a bill of lading, dated January 25, 2000, which had been prepared by Manhattan. The bill of lading provided that the sender was "Q Run Corporation" located in Costa Mesa, California. The

destination of the shipment was an Office Max store in Las Vegas, Nevada. The bill of lading indicated that the shipment consisted of "Compaq PC 7360" weighing a total of 11,804 pounds in 26 pallets. The January 25, 2000, bill of lading further provided: "Unless a greater value is declared herein, the shipper agrees and declares that the value of the property is released in an amount not exceeding $50 for any shipment of 100 pounds or less and not exceeding 50 cents per pound for any shipment weighing in excess of 100 pounds. An additional charge of $0.25 will be assessed for each $100.00 (or fraction thereof), by which the value declared exceeds $.050 per pound or $50.00 (whichever is higher)." No greater value was declared in the bill of lading. The amount indicated on the bill of lading understated the value of the computer equipment Mr. Gonzalez was transporting to Las Vegas.

Mr. Healy explained why the bill of lading dramatically understated the value of the computer equipment taken from Mr. Gonzalez's truck. Mr. Healy declared: "It is common in the trucking industry to have 'off record' agreements concerning values of high value shipments and the responsibility of carriers to fully indemnify any loss or damage of such shipments at replacement values. This is because the inclusion of high valuation information on freight bills often exposes shipments to a higher risk of loss, while lacking any useful purpose. Carriers such as GTW set their rates for handling shipments, including the shipments tendered to them by Manhattan . . . , without regard to 'declared values' and have no separate rate structures for commodities which are given a 'declared value.' At no time did [Mr.] Gomez ever suggest to me that there was any difference in the rate quotes being given to Manhattan . . . based upon the requirement that GTW fully indemnify at replacement cost value for any loss or damage to shipments. Freight was tendered to GTW to fully indemnify Manhattan . . . against loss and GTW's rate quotes were received and paid on that basis."

## C. *The Trial Court's Ruling*

The trial court granted the summary judgment motion. The trial court held: (1) the contract between GTW and Manhattan was the January 25, 2000, bill of lading; (2) the contract had no "declared value" stated; (3) the bill of lading had a limitation of liability provision setting any loss at $.50 per pound; and (4) plaintiff was not entitled to reformation of the contract. The trial court's ruling further states: "The evidence indicates that Compaq and Manhattan had an agreement between themselves that Manhattan would pay full replacement for a loss. There is an absence of evidence to indicate the existence of a contract between Manhattan, GTW, or Gonzalez/Bolanos Trucking, to pay full replacement. [¶] Conversations did take place between Healy, Gomez and Schneider about insurance coverage. However, the bottom line is that Manhattan did not declare the real value on the [b]ill of

[l]ading, and the law is clear that a carrier is liable only for the amount asserted on the [b]ill of [l]ading [Civil Code section] 2176." In accordance with its conclusions, the court summarily adjudicated the amount owed by defendants to be $7,106. After the trial court entered judgment on the first amended complaint, plaintiff filed a timely notice of appeal.

## III. Discussion

### A. *Standard of Review of Summary Judgment*

In *Aguilar* v. *Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850-851 [107 Cal.Rptr.2d 841, 24 P.3d 493], the Supreme Court described a party's burdens on summary judgment motions as follows: "[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. That is because of the general principle that a party who seeks a court's action in his favor bears the burden of persuasion thereon. [Citation.] There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. . . . [¶] [T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact. . . . A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.]" (Fns. omitted.)

We review the trial court's decision to grant the summary judgment de novo. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65, 67-68 [99 Cal.Rptr.2d 316, 5 P.3d 874]; *Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1188 [91 Cal.Rptr.2d 35, 989 P.2d 121], disapproved on another point in *Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 853, fn. 19.) The trial court's stated reasons for granting summary judgment are not binding on us because we review its ruling, not its rationale. (*Szadolci v. Hollywood Park Operating Co.* (1993) 14 Cal.App.4th 16, 19 [17 Cal.Rptr.2d 356]; *Barnett v. Delta Lines, Inc.* (1982) 137 Cal.App.3d 674, 682 [187 Cal.Rptr. 219].)

### B. *There Are No Triable Issues of Material Fact*

#### 1. *The Carmack Amendment*

Because the undisputed evidence established that the goods were being shipped from Carson, California to Las Vegas, Nevada, there is an issue of

whether the action is governed by federal or state law. ■ Congress has the constitutional authority to regulate shipments of goods from one state to another. (U.S. Const., art. I, § 8, cl. 3; *Adams Express Co. v. Croninger* (1913) 226 U.S. 491, 505-506 [33 S.Ct. 148, 151-152, 57 L.Ed. 314].) Enacted as part of the Hepburn Act in 1906, the Carmack Amendment to the Interstate Commerce Act, title 49 United States Code section 14706, applies to motor carrier transportation of property between a location in one state to a place in another state. (49 U.S.C. § 13501; *Project Hope v. M/V IBN SINA* (2d Cir. 2001) 250 F.3d 67, 74-75.) State courts have jurisdiction over Carmack Amendment claims. (49 U.S.C. § 14706(d); *Missouri, Kansas & Texas Ry. Co. v. Harris* (1914) 234 U.S. 412, 421 [34 S.Ct. 790, 794, 58 L.Ed. 1377].)

The effect of the Carmack Amendment on state laws was described by the Court of Appeals for the Fifth Circuit as follows: "Our analysis must begin with the Supreme Court's decision in *Adams Express Co. v. Croninger*, 226 U.S. 491 . . . [, *supra*]. In *Adams*, the plaintiff hired the defendant, a common carrier, to ship a package containing a diamond ring from Ohio to Georgia. The package never arrived. The bill of lading stated that charges for delivering the package were based on the value of the shipment, that the value was to be declared by the shipper, and that failure to declare the value would result in a rate based on a value of $50. The plaintiff had not declared a value. Nevertheless, he brought suit against the defendant in Kentucky state court for the full market value of the ring. Under Kentucky law, the contract to limit the plaintiff's recovery to an agreed or declared value was invalid, and the plaintiff was generally entitled to recover the actual value of the ring. The plaintiff prevailed, and the case eventually went to the Supreme Court. [¶] The primary issue before the Court was whether a contract for an interstate shipment, as evidenced by a bill of lading, was governed by 'the local law of the state, or by the acts of Congress regulating interstate commerce.' *Adams*, 226 U.S. at 500 . . . . The Court noted that before the Carmack Amendment, the liability of common carriers for an interstate shipment of property was governed by either 'the general common law'—as pronounced by the state and federal courts—or the statutory laws of the states. *Id.* at 504 . . . . Because of the many varying laws that might apply to a dispute arising out of any given interstate shipment of goods, it was impossible for interstate shippers and carriers to determine their risks and responsibilities with any reasonable certainty. See *id.* at 505 . . . . The Carmack Amendment, the Court held, 'made an end to this diversity, for the national law is paramount and supersedes all state laws as to the rights and liabilities and exemptions created by such transactions.' *Id.*; *accord, Air Prod. & Chem., Inc. v. Illinois Cent. Gulf R.R. Co.*, 721 F.2d 483, 486 (5th Cir.1983), *cert. denied,* 469 U.S. 832, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984)."

(*Morris v. Covan World Wide Moving, Inc.* (5th Cir. 1998) 144 F.3d 377, 381; see *Project Hope v. M/V IBN SINA, supra,* 250 F.3d at pp. 74-75; *Hughes Aircraft v. North American Van Lines* (9th Cir. 1992) 970 F.2d 609, 611.)

The general scope of the Carmack Amendment federal preemption of state shipping statutes is as follows: "[S]tate statutes are preempted by the Carmack Amendment if they 'in any way enlarge the responsibility of the carrier for loss or at all affect the ground of recovery, or the measure of recovery.' [Citation.] [¶] The Carmack Amendment and the set of federal regulations that complement it cover not only the actual transport of goods, but they also govern the claims process." (*Rini v. United Van Lines, Inc.* (1st Cir. 1997) 104 F.3d 502, 505, quoting *Charleston & Car. R. R. v. Varnville Co.* (1915) 237 U.S. 597, 603 [35 S.Ct. 715, 716, 59 L.Ed. 1137].) In *Rini,* the First Circuit Court of Appeals further synthesized the scope of Carmack Amendment preemption as follows: "A state law 'enlarges the responsibility of the carrier for loss or at all affects the ground of recovery, or the measure of recovery,' [citation], where, in the absence of an injury separate and apart from the loss or damage of goods, it increases the liability of the carrier. Preempted state law claims, therefore, include all liability stemming from damage or loss of goods, liability stemming from the claims process, and liability related to the payment of claims." (*Rini v. United Van Lines, Inc., supra,* 104 F.3d at p. 506, citing *Charleston & Car. R. R. Co. v. Varnville Co., supra,* 237 U.S. at p. 603 [35 S.Ct. at p. 716].)

The Carmack Amendment applies to the present case in two specific ways—a carrier must issue a bill of lading and that document can limit its liability for loss or damage to goods. ▮ First, the Carmack Amendment requires a carrier to issue a bill of lading and subjects it to absolute liability for actual loss incurred during transportations as follows: "A carrier providing transportation or service . . . shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105 are liable to the person entitled to recover under the receipt or bill of lading." (49 U.S.C. § 14706(a)(1); *Missouri P. R. Co. v. Elmore & Stahl* (1964) 377 U.S. 134, 137 [84 S.Ct. 1142, 1144, 12 L.Ed.2d 194]; *Hughes Aircraft v. North American Van Lines, supra,* 970 F.2d at p. 611.) Second, the Carmack Amendment allows a carrier to limit its liability in a bill of lading. Title 49 United States Code section 14706(c)(1)(A) states in pertinent part: "[A] carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 may, subject to the provisions of this chapter (including with respect to a motor carrier, the

requirements of section 13710(a)), establish rates for the transportation of property (other than household goods described in section 13102(10)(A)) under which *the liability of the carrier for such property is limited to a value established by written or electronic declaration of the shipper* or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation." (Italics added.) The right of a shipper to reduce its potential liability is referred to as the " 'released value doctrine.' " (*Kemper Ins. Companies v. Federal Exp. Corp.* (1st Cir. 2001) 252 F.3d 509, 511; *Klicker v. Northwest Airlines, Inc.* (9th Cir. 1977) 563 F.2d 1310, 1315.)

A condition to the application of the released valuation doctrine is that a shipper must be given a reasonable opportunity to opt for lower or higher liability by the carrier by paying a lesser or greater charge as the case may be. (*New York, N. H. & H. R. Co. v. Northnagle* (1953) 346 U.S. 128, 135-136 [73 S.Ct. 986, 990-991, 97 L.Ed. 1500]; *HIH Marine Ins. Services, Inc. v. Gateway Freight Services* (2002) 96 Cal.App.4th 486, 492 [116 Cal.Rptr.2d 893].) The requirement that the shipper be given a reasonable opportunity to negotiate a higher rate in exchange for greater liability by the shipper was explained by our colleague Associate Justice Douglas E. Swager of the First Appellate District as follows: " '[U]nder the federal common law governing common carriers, carriers may partially limit their liability for injury, loss, or destruction of baggage on a "released valuation" basis. [Citation.] . . . [I]n exchange for a low carriage rate, the passenger-shipper is deemed to have released the carrier from liability beyond a stated amount.' The federal courts have, however, restricted the application of this doctrine to cases where the carriers give 'customers a fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge. [Citation.] Therefore, the shipper is bound only if he has reasonable notice of the rate structure and is given a fair opportunity to pay the higher rate in order to obtain greater protection.' ([*Deiro v. American Airlines, Inc.* (9th Cir. 1987) 816 F.2d 1360, 1365]; see also *Klicker v. Northwest Airlines, Inc.*[, *supra*,] 563 F.2d [at p.] 1315.)" (*HIH Marine Ins. Services, Inc. v. Gateway Freight Services, supra*, 96 Cal.App.4th at p. 492.)

█ The preemptive effect on the amount of potential liability resulting from the Carmack Amendment extends to a shipper's tort claims against a carrier. As explained by the Second Circuit Court of Appeals, even tort claims are subject to the liability limitations set forth on a bill of lading: "A valid limitation of liability clause governs 'not only the nature and extent of [the carrier's] liability, but also the nature and extent of the shipper's right of recovery.' *North American Phillips Corp. v. Emery Air Freight Corp.* 579 F.2d 229, 233 (2d Cir.1978). Such clauses, therefore, limit recovery not only

for breach of contract, but also based on other legal theories, including negligence, bailment, or conversion. *See Owens-Corning Fiberglass Corp.* [(1994)] 853 F.Supp. [656,] 665-[666] (valid limitation of liability clause also applies to claims sounding in tort); *Neal v. Republic Airlines, Inc.*, 605 F.Supp. 1145, 1148 (N.D.Ill. 1985) (holding that '[w]here . . . it is clear plaintiffs seek damages for breach of the carriage contract . . . [t]hey must proceed, if at all, on a breach of contract theory,' and the contractual limitation of liability applies if otherwise valid); 3 SAUL SORKIN, GOODS IN TRANSIT § 13.07[1], at 13-123 & n. 27 (1976 & Supp. 1998) (contractual limitations of liability 'may not be avoided by framing the complaint in terms of bailment or tort')." (*Nippon Fire & Marine v. Skyway Freight Systems* (2d Cir. 2000) 235 F.3d 53, 60.) We do not address or decide whether a carrier can be sued on a tort theory if the bill of lading does not address the issue. But, even if a noncontractual action can be pursued notwithstanding the Carmack Amendment, the potential *amount of tort damages* are those in the contractual limitation set forth in the bill of lading.

## 2. *Plaintiff's additional damage and tort claims*

In this case, the released value doctrine limits plaintiff's damages to those specified in the bill of lading issued by its assignor, Manhattan. This case arises out of the *interstate* shipment by a common carrier of computer equipment. All of plaintiff's claims are therefore subject to the preemptive effect of the Carmack Amendment. (*Adams Express Co. v. Croninger, supra,* 226 U.S. at pp. 500-505 [33 S.Ct. at pp. 149-152]; *Morris v. Covan World Wide Moving, Inc., supra,* 144 F.3d at p. 381.) It necessarily follows that the trial court correctly found there was no merit under California law to plaintiff's contention it could pursue additional damage claims. Plaintiff argues that under California law, a common carrier cannot contractually exonerate itself from claims for conversion, gross negligence, fraud, or willful wrongdoing. (Cal. U. Com. Code, § 7309, subd. (2)[1]; Civ. Code,

---

[1]California Uniform Commercial Code section 7309, provides in pertinent part: "(1) A carrier who issues a bill of lading whether negotiable or nonnegotiable must exercise the degree of care in relation to the goods which a reasonably careful man would exercise under like circumstances. This subdivision does not repeal or change any law or rule of law which imposes liability upon a common carrier for damages not caused by its negligence. [¶] (2) Damages may be limited by a provision that the carrier's liability shall not exceed a value stated in the document if the carrier's rates are dependent upon value and the consignor by the carrier's tariff is afforded an opportunity to declare a higher value or a value as lawfully provided in the tariff, or where no tariff is filed he is otherwise advised of such opportunity; but no such limitation is effective with respect to the carrier's liability for conversion to its own use."

§ 2175[2]; *Pratt v. Western Pac. R. Co.* (1963) 213 Cal.App.2d 573, 581 [29 Cal.Rptr. 108] [gross negligence].) But plaintiff's conversion claim, insofar as it would allow him to seek monetary damages beyond the $7,106 limitation on liability in the bill of lading, is preempted by the Carmack Amendment.

■ Plaintiff argues, though, that he is not subject under any circumstances to the $7,106 limitation on liability appearing in the bill of lading. As discussed earlier, a party can contend that the limitation in a bill of lading is unenforceable if there was no fair opportunity to choose between higher or lower liability by opting to pay a greater or lesser charge for the shipment respectively. (*Klicker v. Northwest Airlines, Inc., supra,* 563 F.2d at p. 1315; *HIH Marine Ins. Services, Inc. v. Gateway Freight Services, supra,* 96 Cal.App.4th at p. 492.) But in this case, plaintiff's assignor, Manhattan, the usual courier of the shipper, *prepared* the bill of lading with full knowledge that it did not reflect the true value of the computer equipment. Manhattan had adequate notice of the limitation of liability provision because it prepared the bill of lading which contains the released value limiting the carrier's liability. Manhattan does not dispute that it is "a sophisticated business enterprise well familiar with released values and limitations of liability" and it could have declared a higher value. (See *Ruston Gas Turbines v. Pan American World Airlines* (2d Cir. 1985) 757 F.2d 29, 32; *HIH Marine Ins. Services, Inc. v. Gateway Freight Services, supra,* 96 Cal.App.4th at pp. 494-495; *Muelder v. Western Greyhound Lines* (1970) 8 Cal.App.3d 319, 333 [87 Cal.Rptr. 297] ["[i]t may be reasonable to presume that a sophisticated commercial shipper contracts with knowledge of tariff regulations"].) Manhattan itself is in the carrier business. It had an ongoing agreement to transport computer equipment with Compaq Computer Company. Manhattan utilized subcontractors to transport cargo when it was unable to perform a job it agreed to do for Compaq Computer Company. In filling out the bill of lading, Manhattan could easily have declared a higher value and paid a greater carriage rate. Instead, Manhattan chose to pay a lower carriage fee and not declare a higher liability rate. According to Mr. Healy's declaration, this was done in part to disguise the nature of the cargo being delivered in order to discourage theft. Whatever the basis for choosing the lower rate, it was Manhattan's decision to utilize the bill of lading with the liability limitation. It was Manhattan that created the offer to have GTW deliver the goods at the lower rate without declaring the higher value. In issuing the bill of lading, Manhattan expressly agreed to the liability limitations it set forth on the document. Moreover, Manhattan had the ability and

[2]Civil Code section 2175 states, "A common carrier cannot be exonerated, by any agreement made in anticipation thereof, from liability for the gross negligence, fraud, or willful wrong of himself or his servants."

did obtain insurance coverage to protect itself from exposure for loss or damage to the computer equipment. The decision to insure a shipment, as Manhattan did in this case, has been found separately " 'in and of itself [to] demonstrate[] . . . a conscious decision not to opt out of the liability limitation' " by federal courts. (*Read-Rite Corp. v. Burlington Air Express, Ltd.* (9th Cir. 1999) 186 F.3d 1190, 1198, quoting *Vision Air Flight Serv. v. M/V National Pride* (9th Cir. 1998) 155 F.3d 1165, 1169.) Accordingly, Manhattan and its assignee, plaintiff, are bound by its failure to declare a value based on a higher rate.

3. *Plaintiff's reformation claim*

Plaintiff argues he is entitled to reform the bill of lading to set forth a greater potential liability on the part of GTW and Mr. Gonzalez. Decisional authority is unclear as to whether federal law would allow for the use of the reformation remedy to alter the terms of a bill of lading subject to the Carmack Amendment. Some opinions recognize that a federal common law has been developed under varying circumstances to fill in gaps in the Carmack Amendment. (E.g., *Project Hope v. M/V IBN SINA, supra,* 250 F.3d at pp. 75-76 citing *Hector Martinez & Co. v. Southern Pacific Transp.* (5th Cir. 1979) 606 F.2d 106, 108 ["[The Carmack Amendment] incorporates common law principles for damages"]; *Rafaella Gallery v. UPS* (S.D.N.Y. 1993) 818 F.Supp. 53, 54 [recognizing federal common law conversion cause of action exception to the Carmack Amendment but not finding one on facts].) Other authority holds that federal common law may not be used to increase potential liability under a bill of lading. (*Gordon v. United Van Lines, Inc.* (7th Cir.1997) 130 F.3d 282, 287 ["Even if we assume that a federal common law rule with respect to punitive damages would be uniform nationally, the punitive damages remedy would displace the package of remedies that the Interstate Commerce Act contains, and would allow precisely the uncertainty the Carmack Amendment was designed to bar"]; *Cleveland v. Beltman North American Co., Inc.* (2d Cir. 1994) 30 F.3d 373, 380, citing *Massachusetts Mut. Life Ins. Co. v. Russell* (1985) 473 U.S. 134, 147 [105 S.Ct. 3085, 3093, 87 L.Ed.2d 96] [' "[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.' . . . 'The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement' "]; *Commercial Union Ins. Co. v. Forward Air, Inc.* (S.D.N.Y. 1999) 50 F.Supp.2d 255, 257 ["[I]n addition to the fact that no state law claims against carriers survive the enactment of the Carmack Amendment, no federal common law claim against a carrier may be fashioned either"].) Other courts recognize that it is unclear as to the scope of the application of federal

common law in Carmack Amendment cases. (E.g., *Opp v. Wheaton Van Lines, Inc.* (N.D.Ill. 1999) 56 F.Supp.2d 1027, 1035-1036 & fn. 6, rev. on other grounds *Opp v. Wheaton Van Lines, Inc.* (7th Cir. 2000) 231 F.3d 1060, 1066 [agency].)

We need not decide whether a reformation remedy is available so as to permit reformation of a bill of lading. Federal courts have discussed the subject but never reached a firm consistent conclusion as to the availability of a reformation remedy in a Carmack Amendment case. (See *Hopper Furs, Inc. v. Emery Air Freight Corp.* (8th Cir. 1984) 749 F.2d 1261, 1265 ["[shipper's] mistake was unilateral and therefore may not be the basis for reformation of the contract [without the carrier's approval]"]; *Thomas v. Trans World Airlines, Inc.* (3d Cir. 1972) 457 F.2d 1053, 1056 ["[W]hen no question of fraud, bad faith, or inequitable conduct is involved and the right to reform an instrument is based solely on a mistake, it is necessary that the mistake be mutual . . . . [¶] Mere failure to read an instrument, thus giving rise to plaintiff's unilateral mistake, is insufficient to obtain relief."]; *Barrett Moving & Storage v. All States Air Cargo* (N.D.Ill. 1993) 823 F.Supp. 498, 501 ["Possibly fraud can be a basis for avoiding the limitations provision or perhaps for reformation"].)

Under any circumstances, plaintiff was not entitled to reformation of Manhattan's bill of lading utilizing federal common law. The fourth cause of action for reformation in the first amended complaint alleges: "Manhattan . . . erred in issuing transportation documentation for the said shipment, as a result of which such documentation failed to reflect key aspects of the transportation agreement, i.e., [1] that any loss for this shipment would be reimbursed by defendant GTW at full replacement value; [2] that insurance coverage assuring such replacement value would be no less than $500,000 evidenced by a certificate of insurance from an established cargo insurer naming Manhattan . . . as an additional insured, and [3] that the shipment would be direct trucked by defendant GTW, rather than subcontracted by it to another trucking firm. [¶] . . . Such error was the result of a mistake by plaintiff's assignor, Manhattan . . . , by which that company understood that the terms of its verbal arrangement for transportation of freight with defendant . . . GTW, need not be reflected in the transportation documents because [it was brokered] through a third party. [¶] . . . At the time of such error or defendant . . . GTW knew of such error and knew the true and agreed terms of the transportation as aforesaid . . . ."

The moving papers of GTW and Mr. Gonzalez relied upon the bill of lading as their grounds for limiting plaintiff's damages to $7,106. The bill of lading was sufficient to shift the burden of production to plaintiff to produce

evidence of the mistake of fact, be it mutual or unilateral, which warranted reformation of the bill of lading. (Code Civ. Proc., § 437c, subd. (*o*)(2); *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at pp. 850-851; *Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 882 [116 Cal.Rptr.2d 158].) Plaintiff responded with Mr. Healy's declaration, which indicated that in the trucking industry it was a normal practice to falsify entries on a bill of lading as to the value of a shipment. According to Mr. Healy, this is done in order to reduce the dangers of theft. This does not meet the standard applied by federal courts utilizing common law principles to permit reformation of the bill of lading.

Federal courts often look to the American Law Institute Restatements of the Law in order to the evaluate common law claims. (E.g., *Great-West Life & Annuity Ins. Co. v. Knudson* (2002) 534 U.S. 204, 213-214 [122 S.Ct. 708, 714, 151 L.Ed.2d 635] [restitution issues]; *Harris Trust and Sav. Bank v. Salomon Smith Barney Inc.* (2000) 530 U.S. 238, 250 [120 S.Ct. 2180, 2189, 147 L.Ed.2d 187] [trust issues]; *Geier v. American Honda Motor Co.* (2000) 529 U.S. 861, 869-870 [120 S.Ct. 1913, 1919-1920, 146 L.Ed.2d 914] [tort and preemption issues]; *N.L.R.B. v. Cook County School Bus, Inc.* (7th Cir. 2002) 283 F.3d 888, 893 [mutual mistake of fact and reformation].) American common law allows for reformation of an instrument when the document fails to express the agreement of the parties because of a mistake as to the contents or effect of a writing. (Rest.2d Contracts, § 155 & com. c, pp. 474-476; *N.L.R.B. v. Cook County School Bus, Inc.*, *supra*, 283 F.3d at p. 893.) The Seventh Circuit Court of Appeals, applying the common law, held: "As the Restatement puts it, 'Where a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents . . . of the writing, the court may at the request of a party reform the writing to express the agreement.' Restatement (Second) of Contracts § 155 (1981). In order to be entitled to reformation, a party must present clear and convincing evidence that the agreement as written does not express the true intention of the parties and that there was a mutual mistake. Restatement (Second) of Contracts § 155 cmt. c (1981); *cf. Board of Trustees v. Insurance Corp.*, 969 F.2d 329, 332 (7th Cir.1992) (discussing Restatement position on reformation and requiring clear and convincing evidence)." (*N.L.R.B. v. Cook County School Bus, Inc.*, *supra*, 283 F.3d at p. 893, fn omitted; see 66 Am.Jur.2d (2001) Reformation of Instruments, § 10, p. 234.)

Plaintiff failed to present any evidence of a mutual or unilateral mistake of fact such as to permit reformation. As to Mr. Gonzalez, there was no evidence he was aware of the prior oral understanding between plaintiff's assignor, Manhattan, and GTW, concerning the shipment of goods. Further,

there was no evidence presented by plaintiff that an employee of Manhattan incorrectly filled out the bill of lading. The only evidence in this regard was Mr. Healy's declaration that it was common practice in the trucking industry to falsify valuation figures on a bill of lading. Falsification of a document federal law requires to be prepared, such as a bill of lading, does not constitute a mistake of fact such as to allow reformation. Plaintiff has cited no authority for the proposition that deliberate falsification of federally required documentation constitutes a mistake of fact. Under these circumstances, plaintiff failed to produce sufficient evidence so as to permit reformation of the bill of lading under federal law, if such is possible at all.

4. *Whether the Carmack Amendment applies only to actions between an original shipper and the carrier*

Plaintiff contends that the limitation of liability provision in the January 25, 2000, bill of lading is inapplicable to its common law claims because the Carmack Amendment only applies to actions between an original shipper and a carrier. Plaintiff reasons that its assignor, Manhattan, was not an original shipper. Rather, plaintiff argues that Manhattan was merely a carrier who subcontracted the shipping responsibilities to GTW and Mr. Gonzalez. Plaintiff therefore reasons that the Carmack Amendment does not apply to it. Plaintiff relies upon language in *Project Hope v. M/V IBN SINA, supra,* 250 F.3d at page 75, footnote 7, to support its position. In *Project Hope,* the Second Circuit stated while discussing questions of joint and several liability that while the Carmack Amendment governs the liability of carriers to the original shipper of the goods, the liability of one carrier to another is governed by state negligence law. (*Ibid.*; see also *American Foreign Ins. Ass'n v. Seatrain Lines, etc.* (1st Cir. 1982) 689 F.2d 295, 299.) *Project Hope* is distinguishable from the case at bench because *Project Hope,* did not address the issue raised in this case, which is whether a valid limitation of liability provision issued by one carrier is enforceable by another carrier and subcontractor. This issue was neither raised in nor considered by *Project Hope. Project Hope* simply addresses issues of joint and several liability.

The controlling decisional authority is *Nippon Fire & Marine v. Skyway Freight Systems, supra,* 235 F.3d at pages 60-61, which addressed the issue of the effect of a valid limitation of liability provisions between primary and secondary carriers. *Nippon* concluded that, under such circumstances, a valid limitation of liability provision is enforceable. (*Ibid.*) The rationale of this rule is that the secondary carrier is entitled to treat the primary carrier as the shipper when the goods were tendered for shipment. (*Chicago etc. Co. v. Acme Freight* (1949) 336 U.S. 465, 487 [69 S.Ct. 692, 702-703, 93 L.Ed. 817] [a forwarder tendering goods may be treated as a shipper]; *Nippon Fire*

& *Marine v. Skyway Freight Systems, supra*, 235 F.3d at pp. 60-61 [where contracts between secondary carriers and primary carrier contain valid limitation of liability clauses, secondary common carriers are entitled to assume that primary carrier who tenders goods either owns goods or has authority to ship them].) In tendering the computer equipment for shipment, it was Manhattan that issued the bill of lading containing a valid limitation of liability provision. Manhattan and its assignee, plaintiff, are precluded from asserting claims for loss to the goods in excess of this provision.

5. *The right of Mr. Gonzalez to claim the protections of the limitation of liability in the bill of lading*

Plaintiff argues that even if GTW was entitled to the limitation on liability in the bill of lading, Mr. Gonzalez was not. However, plaintiff's complaint alleges that Mr. Gonzalez was the agent of GTW. Plaintiff has presented no evidence to indicate other than that Mr. Gonzalez acted as the agent of GTW when he picked up the computer equipment in Carson, California and delivered it to Las Vegas, Nevada. Therefore, Mr. Gonzalez was acting as the agent of GTW and is entitled to the protections of the Carmack Amendment. (*Reed v. Wiser* (2d Cir. 1977) 555 F.2d 1079, 1092, 38 A.L.R.Fed. 928 [carrier's employees are protected]; *Royal Ins. v. Amerford Air Cargo* (S.D.N.Y. 1987) 654 F.Supp. 679, 682 [a carrier's agent may claim the protection of the limitation of liability provision]; *Kemper Ins. Companies, Inc. v. Federal Exp. Corp.* (D.Mass. 2000) 115 F.Supp.2d 116, 127 [motor carrier standard is materially same as applying to air carriers under federal common law]; *McCaskey v. Continental Airlines, Inc.* (S.D.Tex. 2001) 159 F.Supp.2d 562, 578-579 [agents and subcontractors can claim the protection of a limitation of liability provision if the services provided were in the furtherance of the contract of carriage]; *Croucher v. Worldwide Flight Services, Inc.* (D.N.J. 2000) 111 F.Supp.2d 501, 504-505 [independent contractors are covered if services are provided in furtherance of carriage]; *Alleyn v. Port Authority of New York* (E.D.N.Y. 1999) 58 F.Supp.2d 15, 23 [independent contractors are covered if services are provided in furtherance of carriage].) ▮ A third party is protected by the limitation of liability if, at the time of the loss, the party was performing services incidental to the carriage. (*HIH Marine Ins. Services, Inc. v. Gateway Freight Services, supra*, 96 Cal.App.4th at pp. 494-495.) Mr. Gonzalez is entitled to the protection of the limitation of liability provision.

## DISPOSITION

The judgment is affirmed. Defendants, Julian Gonzalez, doing business as Gonzalez Trucking, and David & Simon, Incorporated, doing business as

GTW, are to recover their costs on appeal from plaintiff, Johanne Dictor, doing business as CPCI.

Grignon, J., and Mosk, J., concurred.