Filed 7/27/21  Dopke v. City of Pasadena CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SCOTT DOPKE et al., | B304020 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC611949) |
| v. | |
| CITY OF PASADENA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John J. Kralik, Judge.  Affirmed.

Law Office of John V. Gaule and John V. Gaule for Plaintiffs and Appellants.

Michele Beal Bagneris, City Attorney, and John W. Nam, Deputy City Attorney, for Defendant and Respondent.

_____

Plaintiffs and appellants sued the City of Pasadena (the City) after their son collided with another motorist at a purported dangerous intersection and died. The trial court granted summary judgment in favor of the City. Appellants contend this was error.

We conclude the trial court did not err for two independent reasons: (1) appellants submitted no evidence in support of their opposition to summary judgment; and (2) appellants failed to raise a triable issue of material fact that a dangerous condition existed at the intersection in question. Accordingly, we affirm the judgment in favor of the City.

## BACKGROUND

Appellants Scott and MaryAnn Dopke (the Dopkes) are the parents of Nick Dopke who was killed while riding his motorcycle in the City. Nick Dopke collided with Thomas Barela at the intersection of Del Mar Boulevard and Meridith Avenue (sometimes referred to as the Intersection). At the time of the collision, Nick Dopke was riding his motorcycle westbound on Del Mar Boulevard. Barela was making a left turn onto Del Mar Boulevard from Meridith Avenue.

The speed limit on Del Mar Boulevard near the Intersection was 35 miles per hour. Officer Phillip Klotz estimated that Nick Dopke was traveling 75.6 miles per hour immediately prior to the collision. Officer Klotz used a "time and distance calculation to determine an approximate speed, using several landmarks as reference points that were visible on the surveillance video" obtained during the police investigation of the collision. Klotz opined that if Nick "Dopke had been traveling at or near the posted 35 mph speed limit, the collision would have been preventable."

2

## 1.    *Complaint*

On March 16, 2016, the Dopkes sued the City, alleging in a form complaint:  "On the date of the incident, traffic had been rerouted because of a bicycle race causing more congestion than normal on Del Mar Blvd[.] and Meridith Avenue.  Vehicles parked on westbound Del Mar and the trees on the northside of Del Mar obscured the sight lines of drivers turning left onto eastbound Del Mar from Meridith making it impossible to see a motorcycle traveling in the right of way on westbound Del Mar.  As a result, the decedent and a vehicle making a left turn onto Del Mar from Meridith collided causing the death of the decedent.  The decedent, Nick Dopke, was the adult son of the Plaintiffs.  On May 31, 2015, [the date of the collision], he was riding his motorcycle westbound on Del Mar Blvd[.] in Pasadena."

## 2.    *The City moved for summary judgment*

The City argued that Government Code[1] section 835, governing a dangerous condition of public property, is the sole basis for imposing liability on a public entity based upon the condition of public property, and that no evidence supported any element of such a cause of action here.  Specifically, there was no evidence that the Intersection was the proximate cause of the accident or that the City had actual or constructive notice of a dangerous condition at the Intersection.  The City further argued that it was immune from liability under sections 830.6, 820.8, and 820.2.

In his declaration in support of summary judgment, Kris Markarian, a city engineer, represented that he had

---

[1]  All statutory citations are to the Government Code.

reviewed complaints from January 1, 2008 through May 31, 2015 and found none concerning any dangerous condition of the Intersection. The City's routine inspections revealed no dangerous condition, and the City's postaccident inspection revealed no dangerous condition. In her declaration, Arlene Gallardo, the City's risk and insurance administrator, stated the City has "no record of any claims or lawsuits from 1979 to the present regarding any traffic collisions or claims of a dangerous condition of public property at, or near, the intersection at Del Mar Blvd. and Mer[i]dith Ave., other than the May 31, 2015 incident involving" Nick Dopke. Markarian explained that a professional engineer designed the Intersection in accordance with accepted engineering guidelines and that it was constructed according to the professional engineer's plan.

Wes Pringle, a registered professional engineer in the fields of civil and traffic engineering, echoed these conclusions in opining: The Intersection "was safe when used with due care and was not a dangerous condition of public property. The subject intersection and roadway [were] not negligently designed or maintained. The intersection at Del Mar Blvd. and Mer[i]dith Ave. was reasonably constructed and gave sufficient sight lines at the Mer[i]dith Ave. limit to alert drivers to the presence of oncoming traffic and therefore gave adequate warning to drivers, making a left from Mer[i]dith Ave. to head eastbound on Del Mar Blvd., of the potential that there might be oncoming traffic." Pringle opined on the cause of the accident as well: Nick Dopke was "operating his motorcycle at over 40 mph over the posted 35 mph speed limit on Del Mar Blvd. Additionally, the driver of the car, Barela, contributed to the collision by failing to yield the right of way to oncoming traffic."

4

Joaquin Siques, a traffic engineer for the City, inspected the Intersection and "confirmed that there was adequate approach sight distance for the intersection of Del Mar and Mer[i]dith in both directions of travel along Del Mar Blvd. At the speed limit of 35 mph, the minimum stopping distance required is 250 feet. . . . I estimated that from Mer[i]dith, the intersection at Del Mar is visible from a distance of over 400 feet." Siques concluded, "There is no street design deficiency that would create a dangerous condition at this intersection."

Siques also observed that the "intersection of Del Mar Blvd. and Mer[i]dith Ave . . . has a collision rate which is significantly less than the average rate for similar intersections." Siques reiterated, "There had not been any prior complaints from residents to the City regarding safety at the subject intersection."

The City also attached portions of Thomas Barela's deposition to its motion. Barela testified: Just before the collision, "Del Mar seemed to be absent of cars and activity. It just seemed to be quiet." Barela was in the process of initiating a left-hand turn when the accident occurred. Barela testified that vehicles parked on Del Mar "impeded" his view "of westbound traffic on Del Mar."

3.    *Opposition to summary judgment*

The Dopkes argued there were triable issues of fact regarding the existence of a dangerous condition at the Intersection, the cause of the accident, and the City's knowledge about any such dangerous condition. They provided no evidentiary submission. With the exception of citation to the Barela deposition, their separate statement was devoid of any citation to evidence following their asserted disputed facts.

5

In their opposing memorandum of points and authorities, the Dopkes represented that Barela drove on Meridith instead of on Colorado because of a bicycle race taking place in the City. The Dopkes further represented Tartanya Smitheman had testified in a deposition that she had heard 48 accidents over a four-year period at "the corner of Allen and Del Mar or approximately at that location." According to the Dopkes, Smitheman complained only to her husband about that number of accidents. The Dopkes further contended Barela testified that vehicles parked on Del Mar impeded his view of westbound traffic on Del Mar. The Dopkes failed to attach any deposition testimony to their opposing papers.

## 4. *Tentative opinion*

The trial court tentatively concluded the Dopkes had presented no evidence of a dangerous condition. The court explained: The Dopkes have "not provided the declaration of an expert—or in fact any evidence at all with the opposition brief—that the Subject Intersection does or does not constitute a dangerous condition and whether it was a dangerous condition because the City allowed cars to park on the streets, the trees were untrimmed, etc." Additionally, the Dopkes presented no evidence "that the Subject Intersection and parked cars (or trees surrounding the roadway) were the proximate cause of Decedent's injury." The trial court also tentatively concluded the Dopkes presented no evidence that the City knew of the alleged dangerous condition.[2]

_____

[2] The trial court did not consider the City's argument below that it was immune from liability. Because the City does not address this defense on appeal, and because we conclude that

6

5. *Hearing and judgment*

At the summary judgment hearing, the Dopkes' counsel argued there was "more traffic coming through Mer[i]dith than there ordinarily would be." The court asked whether an expert witness had testified to that fact and counsel responded: "I didn't think it was necessary for purposes of summary judgment motion in terms of determining whether there was a triable issue of fact as to this."

After the Dopkes' counsel argued there were triable issues of fact, the court stated, "All you're telling me about it is there's some trees and parked cars there. If that was enough to say an intersection was dangerous, every single intersection would be dangerous. I mean, the City of Pasadena's been there a long time, a city with a lot of trees." Counsel argued: "With all due respect, Your Honor, I don't think it's this court's position to kind of make that determination." Counsel elaborated that it was for the jury, and not the court to decide if these facts created a dangerous intersection.

The trial judge took the matter under submission, and thereafter, granted summary judgment in favor of the City.

## STANDARD OF REVIEW

Our standard of review of a summary judgment is familiar. "As a summary judgment motion raises only questions of law regarding the construction and effect of supporting and opposing papers, this court independently applies the same three-step

_____

as a matter of law, there was no triable issue of fact as to whether a dangerous condition existed, we do not address the City's immunity defense.

7

analysis required of the trial court. We identify issues framed by the pleadings; determine whether the moving party's showing established facts that negate the opponent's claim and justify a judgment in the moving party's favor; and if it does, we finally determine whether the opposition demonstrates the existence of a triable, material factual issue." (*Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1342.) This court reviews the trial court's ruling, "not its rationale." (*Dictor v. David & Simon, Inc.* (2003) 106 Cal.App.4th 238, 245.)

This court's obligation to conduct a "de novo review [of the grant of summary judgment] does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues. As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed." (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 116, disapproved on another ground as recognized in *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 41–42; see also *Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768 ["appellate court is not required to search the record on its own seeking error"]; *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1111, 1115 [rejecting appellant's challenge to the grant of summary judgment because, although appellant argued " 'a plethora of admissible evidence' indicat[ed] a triable issue of fact existed" on many of his claims, appellant waived the argument by failing to identify where the evidence could be found in the record].)

## DISCUSSION

On appeal, the Dopkes contend they sufficiently raised triable issues of material fact supporting the inference that the City created a dangerous condition.  The Dopkes contend the trial court erred in concluding no evidence supported the inference that the Intersection was "not dangerous."  (Boldface & capitalization omitted.)

### A.    The Dopkes Cite No Evidence, and Therefore Show No Triable Issue of Material Fact

Section 835 provides the architecture for a claim against a public entity for a dangerous condition on public property: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

"(a)  A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

"(b)  The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

Section 830 defines " '[d]angerous condition' " as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner

9

in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a).) Courts have recognized that use of public property in an improper manner can defeat a claim of "dangerous condition." (*Sun v. City of Oakland* (2008) 166 Cal.App.4th 1177, 1183.) " ' "With respect to public streets, courts have observed 'any property can be dangerous if used in a sufficiently improper manner. For this reason, a public entity is only required to provide roads that are safe for reasonably foreseeable careful use." [Citation.]' " (*Ibid.* ) A City is not "charged with foreseeing" that motorists will recklessly disobey traffic laws. (*Chowdhury v. City of Los Angeles* (1995) 38 Cal.App.4th 1187, 1196.)

The Dopkes do not dispute that the City satisfied its initial burden in moving for summary judgment. Thus, the burden shifted to them to demonstrate a triable issue of material fact. The Dopkes appellate briefs contain *no* citation to evidence in support of their contention that there are triable issues of fact as to their claim for dangerous condition of public property. With the exception of quoting from the transcript of the hearing below, they only reference their opposition to summary judgment, which is not evidence, and which itself, as previously noted, did not contain the deposition testimony referenced in their opposing memorandum of points and authorities. These defects are fatal to the appeal before us.[3] (*Guthrey v. State of California, supra,* 63 Cal.App.4th at p. 1115 [citation to points and authorities in support of motion for summary judgment is not citation to admissible evidence]; see also *Jackson v. County of Los Angeles*

_____

[3] We observe that in their reply, the Dopkes did not address the City's arguments about these defects.

(1997) 60 Cal.App.4th 171, 178, fn. 4 [separate statement is not evidence].)

In sum, the Dopkes failed to satisfy their shifted burden to demonstrate a triable issue of material fact precluding summary judgment, and have thus failed to demonstrate the trial court erred in granting defendant's motion for summary judgment. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [" 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.]"].)

## B. The Purported "Evidence" the Dopkes Cite Does Not Support the Inference that the Intersection Was a Dangerous Condition

The Dopkes argue the following "facts" are sufficient to defeat the City's summary judgment motion: (1) "whether the City's rerouting of traffic for a bicycle race known as CicLAvia contributed to the traffic collision"; (2) "the number of traffic collisions at or near the intersection of Del Mar and Mer[i]dith, where the accident occurred"; and (3) whether the sight lines from Mer[i]dith eastbound on Del Mar are adequate."

It is undisputed that Barela drove on Meridith Avenue because of a bicycle race in the City known as CicLAvia. Evidence that Barela altered his route because of this race does not support the inference that there was a substantial risk of injury at the Intersection. Smitherman's purported but not proffered deposition testimony concerning accidents occurring at a completely different intersection, the corner of Allen and

11

Del Mar Boulevard, also is not probative of any dangerous condition of property at the Intersection, located at the corner of Meridith and Del Mar. Nothing in the Dopkes' description of Smitherman's deposition testimony indicates she testified about the number of accidents at the Intersection, and the Dopkes provide no evidence supporting the inference that any accident other than the one involving Nick Dopke occurred at the Intersection. Thus, the Dopkes raised no triable issue of material fact that the Intersection was dangerous, that the City created the dangerous condition, or that the City was either actually or constructively aware of any purported danger.

Even if, arguendo, parked cars impeded Barela's sight as he so testified, there was no evidence that this posed a risk of injury if the Intersection was used with due care. The Dopkes offered no evidence disputing Officer Klotz's declaration that Nick Dopke was traveling over 75 miles per hour, more than twice the speed limit. The Dopkes offered no evidence that the sight lines were inadequate when drivers used the Intersection with due care.

The Dopkes argue that the trial court improperly relied upon his personal knowledge of the City in granting summary judgment. Although the record shows that the trial court referenced its familiarity with Pasadena streets, the Dopkes demonstrate no prejudicial error based on these statements.

The judge presiding over the trial stated that he "lived in that City long enough to know" that Colorado Boulevard was a major thoroughfare. The trial court also stated that "the City of Pasadena's been there a long time, a city with a lot of trees," to which the Dopkes' counsel responded, "I know."

In granting summary judgment in favor of the City, the trial court reached the only conclusion consistent with the record

12

before us.  That is, the Dopkes identified no evidence raising a triable issue of material fact precluding summary judgment as to the existence of a dangerous condition at the Intersection.  For those reasons, the Dopkes have failed to demonstrate the trial court erred in granting summary judgment in the City's favor.[4]

## DISPOSITION

The judgment is affirmed.  The City of Pasadena shall have its cost on appeal.

<u>NOT TO BE PUBLISHED.</u>


                                                    BENDIX, Acting P. J.

We concur:


       CHANEY, J.                          CRANDALL, J.[*]

---

[4] In their reply, the Dopkes argue they did not need to proffer expert testimony.  We decline to consider this argument raised for the first time in the reply brief.  (*Levin v. Ligon* (2006) 140 Cal.App.4th 1456, 1486 ["It is elementary that points raised for the first time in a reply brief are not considered by the court."]; see also *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 158 [same].)

Because no evidence raised a triable issue of material fact supporting the inference that the Intersection was a dangerous condition, we also do not consider the City's arguments that the Intersection was not the proximate cause of the collision or that there was no evidence that the City had notice the Intersection was a dangerous condition.

[*] Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.